IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
September 25, 2018 Session

**STATE OF TENNESSEE v. TERESA DIANA POSTON**

**Appeal from the Circuit Court for Claiborne County**
**No. 2017-CR-2553       E. Shayne Sexton, Judge**

————————————————————

**No. E2018-00385-CCA-R3-CD**

————————————————————

The Defendant, Teresa Diana Poston, pleaded guilty to theft of property valued over $2,500 with an agreed sentence of two years of probation. The parties agreed to a separate hearing to determine whether the trial court would grant the Defendant judicial diversion. After the hearing, the trial court denied the Defendant's request for judicial diversion and imposed the agreed upon sentence. On appeal, the Defendant contends that the trial court erred when it denied her request for judicial diversion. After review, we vacate the judgment of the circuit court and remand for a new hearing.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Vacated and Remanded**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT L. HOLLOWAY, JR., joined.

Robert R. Asbury, Jacksboro, Tennessee, for the appellant, Teresa Diana Poston.

Herbert H. Slatery III, Attorney General and Reporter; Katherine Casseley Redding, Assistant Attorney General; Jared Ralph Effler, District Attorney General; and Graham Edward Wilson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Facts**

The Defendant was indicted by information on one count of theft of property valued over $2,500. The Defendant entered her guilty plea to that offense on November 6, 2017. At the guilty plea hearing, the Defendant waived her right to be indicted by a

grand jury, and she said she understood that she was pleading guilty to a class D felony, with a sentencing range of two to twelve years. Upon questioning by the trial court, the Defendant expressed her understanding of her rights and the rights she was waiving by pleading guilty. The parties then stipulated that on or about July 1, 2015, the Defendant did "unlawfully, feloniously, knowingly and without the effective consent of the owner, obtain or exercise control over the property of Powell Valley School with intent to deprive said owner of the property, valued at more than 25 hundred dollars." The trial court accepted the guilty plea and set a date for a hearing on the issue of judicial diversion.

The parties reconvened at the sentencing hearing, and the State presented the presence report. The parties reminded the trial court that the parties had agreed to a two-year probationary sentence. The parties agreed that the Defendant had no prior criminal history and was statutorily eligible for judicial diversion.

The presence report, admitted into evidence, showed that the victim was fifty-eight years old, a widow, and had no prior criminal history. The Defendant told the officer creating the report that she had been accused of taking money from Powell Valley Elementary School. She said that state auditors came into the school in November 2016 and January 2017 and said that "by all the evidence [the Defendant] had t[aken] money from the cheerleaders fund." The report also indicated that the Defendant had paid the restitution balance in full of $6,650.86. The Defendant described herself as in good physical and mental health with good family relationships.

The Defendant filed, and the trial court reviewed, a memorandum in support of her request for judicial diversion. The Defendant stated that she had been a bookkeeper at the Powell Valley Elementary School for more than thirty-eight years. In November 2016, the school board conducted an audit, and the auditors met with the Defendant to address irregularities with the school funds. The memorandum stated that, "Notwithstanding that all funds were held in accounts with multiple authorized signatories, the Defendant took the position that as the book keeper [sic] she was responsible for any missing funds." In January 2017, the Defendant was allowed to retire from her position and began receiving her retirement benefits, which is the sole source of her income. Because of the charges, her retirement benefits had been withheld since July 7, 2017.

The Defendant's memorandum cited the factors a judge should consider when determining eligibility for judicial diversion as enumerated in *State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1996), and asserted that the factors weighed in favor of granting her diversion. She noted that, if she were granted judicial diversion, she would be entitled to her retirement benefit.

At the hearing, the Defendant testified and said that she had an associate degree in accounting. She had worked for Powell Valley Elementary School for thirty-eight-and-a-half years and had never had another job. The Defendant said that she accepted responsibilities for the discrepancies in the bookkeeping because she "was the bookkeeper" so "it made it look like [she] was the guilty party." The Defendant said that she was allowed to retire only to learn that her retirement benefit was being withheld until the charges against her were resolved. She said that she had paid full restitution and had been compliant with her probation.

During cross-examination, the Defendant said that she "accepted responsibility for what the auditors found." When pressed by the State about whether she actually took the money, the Defendant said, "No." She denied taking the money and said she had no idea who took it. She then said that she "admitted to [taking] a certain amount" of money to the comptroller but that she had paid back more than they asked her about. The Defendant then said that she did not take any of the money but that some money was missing from fund raising money, so there was a discrepancy.

During redirect examination, the Defendant said that Claiborne County School System required two signatories on accounts.

The trial court expressed concern that the Defendant's testimony was that she did not take any money or commit theft. He stated that, despite this, she had said she was guilty at the guilty plea hearing and also had paid back $6,000 in restitution. The court said, however, that her testimony at the diversion hearing indicated that the Defendant did not believe that her actions constituted theft.

Defense counsel informed the trial court that, after being given her *Miranda* warnings, the Defendant made statements to the State auditor that they "felt were very damaging to her position." He said that while those statements were not "wholly inconsistent" with the Defendant's testimony at the sentencing hearing, it was a "parsing of the words." The statements were included in the comptroller's report. The trial court said it would look at the comptroller's report and take the matter under advisement.

After a brief adjournment, the trial court entered oral findings as follows:

I'm familiar with the electroplating analysis that's required in the . . . analysis for determining suitability for diversion.

I think I tried to adequately express how troubled I am with the [D]efendant's statement that no monies were taken by her or she did not

- 3 -

benefit from the crime that she has pled guilty on. And that troubled – that concern stays – it remains in effect. Based on that, without any further acknowledgement or understanding of – at least acknowledgment of a guilty act, just simply walking in and pleading guilty for something that – where no monies were taken, I – this Court cannot in good conscious grant diversion. Whatever reasons are not apparent to this Court, nor are they on the record. I'm not going to assume that – why things happened or why things did not happen. That is not before this Court. It is – and I don't – the prospect of Ms. Poston not drawing the retirement that in my mind she earned over the years, that is – that is a bad consequence, however that's not – that's not a call that I'm to make. I've been called upon to decide whether or not she is a good candidate for diversion. And otherwise she would be, however, on the stand, she has failed to acknowledge gaining any benefit from the crime that she pled guilty on and for that very reason, I cannot in good conscious grant diversion. The Court will deny that request.

It is from that judgment that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends the trial court erred when it denied her judicial diversion. She contends that the trial court abused its discretion when it: failed to consider all of the factors relevant to a determination of diversion eligibility; denied her diversion because the factors weigh in favor of granting it; failed to find that diversion would serve the Defendant's best interests; and based its decision solely on the Defendant's statement that she did not benefit from the offense. She further contends that the trial court's statements concerning why the Defendant pleaded guilty constituted a violation of the Defendant's due process rights. The State counters that the Defendant is not entitled to relief because the trial court considered the relevant factors and its denial of judicial diversion was reasonable and supported by the record.

The standard of review for questions related to probation or any other alternative sentence is "'an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act.'" *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012) (citing *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). A trial court's decision regarding probation will only be invalidated if the court "wholly departed from the relevant statutory considerations in reaching its determination." *State v. Sihapanya*, 516 S.W.3d 473, 476 (Tenn. 2014) (order) (per curiam). Under an abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. *Id*. at 475. The application of the purposes and principles of sentencing involves a

consideration of "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5).

"Judicial diversion" is a reference to the provision in Tennessee Code Annotated section 40-35-313(a) (2014) for a trial court's deferring proceedings in a criminal case. *See* T.C.A. § 40-35-313(a)(1)(A). Although judicial diversion is not a sentence, pursuant to such diversion, the trial court places the defendant on probation "without entering a judgment of guilty." *Id*. To be eligible or "qualified" for judicial diversion, the defendant must plead guilty to, or be found guilty of, an offense that is not "a sexual offense or a Class A or Class B felony," and the defendant must not have previously been convicted of a felony or a Class A misdemeanor. T.C.A. § 40-35-313(a)(1)(B)(i)(b), (c). Diversion requires the consent of the qualified defendant. T.C.A. § 40-35-313(a)(1)(A). "[A] 'qualified' defendant is not necessarily entitled to diversion. Whether to grant judicial diversion is left to the discretionary authority of the trial courts." *State v. King*, 432 S.W.3d 316, 326 (Tenn. 2014). Following a determination that the defendant is eligible for judicial diversion, the trial court must consider

> (a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the accused's physical and mental health, and (f) the deterrence value to the accused as well as others. The trial court should also consider whether judicial diversion will serve the ends of justice—the interests of the public as well as the accused.

*Id*. (quoting *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996)). "Further, the trial court must weigh the factors against each other and place an explanation of its ruling on the record." *King*, 432 S.W.3d at 326 (citing *State v. Electroplating, Inc*., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998) ).

Although judicial diversion is not a sentence, our supreme court determined that the standard of review first expressed in *State v. Bise*, applies to "appellate review for a trial court's sentencing decision to either grant or deny judicial diversion." *King*, 432 S.W.3d at 325. Importantly, however, the court emphasized that the adoption of the *Bise* standard of review "did not abrogate the requirements set forth in *Parker* and *Electroplating*, which are essential considerations for judicial diversion." *King*, 432 S.W.3d at 326.

The trial court need not provide a recitation of all the applicable "factors when justifying its decision on the record in order to obtain the presumption of

reasonableness," but "the record should reflect that the trial court considered the *Parker* and *Electroplating* factors in rendering its decision and that it identified the specific factors applicable to the case before it." *King*, 432 S.W.3d at 327. When the trial court considers each of the factors enumerated in *Parker* and weighs them against each other, placing its findings in the record, as required by *Electroplating, Inc.*, we "apply a presumption of reasonableness," per *Bise*, and will "uphold the grant or denial so long as there is any substantial evidence to support the trial court's decision." *Id*. When "the trial court fails to consider and weigh the applicable common law factors, the presumption of reasonableness does not apply and the abuse of discretion standard . . . is not appropriate." *Id*. Instead, "the appellate courts may either conduct a *de novo* review or, if more appropriate under the circumstances, remand the issue for reconsideration. The determination as to whether the appellate court should conduct a de novo review or remand for reconsideration is within the discretion of the reviewing court." *Id*. at 328.

We conclude that the trial court did not make the necessary findings on the record. While it perfunctorily stated that it was aware of the *Electroplating, Inc.*, factors, it did not discuss on the record or in a written order how those factors weighed in favor or against the Defendant being granted judicial diversion. Further, we cannot conduct a *de novo* review because the "damning" statements that the Defendant made to the State auditor that were in the comptroller's report, and that the trial court reviewed, are not contained in the record. Accordingly, we remand the case for a new hearing to determine whether the Defendant is entitled to judicial diversion at which the parties shall offer as an exhibit the comptroller's report and after which the trial court shall make the appropriate considerations on the record in its judicial diversion determination.

### III. Conclusion

After a thorough review of the record and relevant authorities, we conclude the trial court did not make the necessary findings regarding judicial diversion on the record. Accordingly, we vacate the judgment of the trial court and remand the case for a new sentencing determination regarding whether the Defendant shall be granted judicial diversion.

_____
ROBERT W. WEDEMEYER, JUDGE